ROBERT R. HIND v. BRIGANTINE "CONSUELO," her tackle, apparel, etc.

DECIDED: MAY 22, 1901.

1.  Where it appeared that while the sailing vessel "Consuelo" was moored in the roadstead of Mahukona, on the island of Hawaii, a "kona," or southwesterly storm arose during the night of the 14th of November, 1901, and about two o'clock in the morning one of the owners of the vessel on shore sent out some natives in a boat "to see if the 'Consuelo' needed anything;" whereupon the Captain of the "Consuelo," with his mate, steward and crew including every man aboard, left the vessel and went ashore with the natives in the boat which had been sent out, some life preservers being in the boat and some of the men carrying bundles; and where it appeared further that this part owner, while the Captain of the vessel was ashore, telephoned to libellant, as the owner of the steamer "Upolu," to send the "Upolu" "to tow out the 'Consuelo' ...... as she had a very valuable cargo on board, and we hate to lose it," and the "Upolu" reached there about 9 o'clock and fastened her lines to the "Consuelo" and towed her out, it nowhere appearing that any agreement had been made in relation to payment for the services to be rendered by the "Upolu;"

*Held,* that the services rendered by the "Upolu" were in the nature of salvage, as the "Consuelo" was in danger of slipping her moor-

ings, going upon the shore, or being swamped in the heavy seas, when the "Upolu" took her in hand and put her in a position of safety. The "Consuelo" was of the value of $6,000, and her cargo was valued at about the same amount; salvage awarded in the sum of $750.

2. The fact that the "Consuelo" suffered no damage is not material. If she were in danger of loss or deterioration at the time the services were rendered, then it is a case for the award of salvage.

IN ADMIRALTY. LIBEL *in rem* FOR SALVAGE.

*Paul Neumann*, Proctor for Libellant.

*Robertson & Wilder*, Proctors for *E. A. Fraser*, intervening for the interest of himself, *Charles Nelson* and *J. Renton*, co-owners of the "Consuelo."

ESTEE, J. This is a libel for salvage brought by Robert R. Hind, libellant, owner of the steamer "Upolu," whereof Frank Dalton is master. It is brought for himself as well as for the master and crew of the steamer "Upolu," against the brigantine "Consuelo" her tackle, apparel, furniture, boats and appurtenances, whereof one A. G. Page is master, and against all persons intervening for their interests therein. Libellant asks salvage in the sum of $3,000. E. A. Fraser answers the said libel, intervening on behalf of himself, C. A. Nelson and J. Renton, as co-owners of the said "Consuelo."

The matter was referred to W. J. Robinson, as special referee, to take testimony and report the same to this Court.

Salvage is defined to be services rendered in the rescue or relief of property at sea in imminent peril of loss or deterioration.

A salvor is one who, without any particular relation to a vessel in distress, proffers useful service and gives it as a voluntary adventurer. He may act with or without request. So assistance needed and rendered under such circumstances is in the nature of salvage services.

The facts appear to be these:

That the "Consuelo," a sailing vessel, Captain A. G. Page commanding, was on a trip from San Francisco to Mahukona, on the Island of Hawaii. She reached the roadstead of Mahukona

about October 25th, 1900, but owing to the fact that other vessels were lying in, could not get a mooring until the evening of the 14th of November, when at about ten o'clock of that night she was moored about a quarter of a mile from the shore.

During the night the wind blew heavily from the southwest toward the land, the barometer fell and a storm known as a "kona," common to these islands, prevailed during the entire night. That about two o'clock in the morning, Mr. Fraser, one of the owners of the "Consuelo," and consignee of her cargo, being on the shore, arose and aroused some of his men and ordered them to go out and go aboard of the "Consuelo" and find out if she needed anything. That they did so, and reported to the captain of the "Consuelo," who with his mate, steward and crew, including every man aboard of the "Consuelo," left the ship and went ashore in the boat with the natives sent out by Mr. Fraser, leaving the "Consuelo" entirely alone.

There is some conflict as to how long they stayed ashore, but it is in evidence that the captain, with his officers and men, remained ashore from a little after four o'clock until after six, when the captain returned alone with the native crew which he claimed to have obtained on shore, in the same boat. It is not contradicted that some life preservers were taken in the open boat when it left the "Consuelo" first, thus tending to show that the officers and men of the "Consuelo" thought there might be need of them, and that the mate and one of the crew took bundles with them to the shore, probably their clothes. It does not appear that the captain ordered his men to remain on the vessel, or that he desired to remain on her himself. No explanation is offered by either the captain or anyone else for the conduct of the crew in leaving; there is no testimony as to a mutiny or any dissatisfaction among the men aboard of her. The captain saying in explanation only: "I couldn't prevent it—they would go. They got in the shore boat and I went in order to get another crew for the vessel." But when ready to sail his old crew went with him on board his ship.

It was certainly most extraordinary conduct on the part of the officers and men of the vessel to desert the ship without cause, and especially as not one of these officers or men, with the exception of the captain and the cook, were called as witnesses to explain this proceeding. It would appear that the action of the crew in deserting the vessel in this manner in company with the captain must have been due to some cause which they now do not admit, and from an examination of all the testimony in relation to the storm that was prevailing, and the position of the "Consuelo," the Court must assume that it was fear of the danger in which the vessel was then in that induced this wholesale desertion. This seems to be more apparent from the testimony of the witnesses for the litbellee to the effect that when the "Upolu" hove in sight, the recreant crew consented to go back at once upon the vessel.

It further appears that Mr. Frazer, one of the owners and the consignee of the "Consuelo," and intervenor herein, telephoned to Mr. Hind, the owner of the "Upolu," then lying at Alaalae, some twelve or fifteen miles from Mahukona, to send the "Upolu." There seems to be some disagreement between Mr. Frazer and Mr. Hind as to what the object was in having the "Upolu" sent around to Mahukona.

Mr. Fraser testified he telephoned to Mr. Hind and asked him where the "Upolu" was..... "I told him," says Mr. Fraser, "that the 'Consuelo' was lying in port with a southerly wind and that there was a possibility that the captain might want to tow out, and I asked him to send the 'Upolu' down and lie there; and in case the captain wanted a tow he could give him the tow."

While Mr. Hind testified: "He (Mr. Fraser) telephoned to me to send the 'Upolu' around to Mahukona to tow the 'Consuelo' out of port, which she afterwards did......I said I would go down and find a boat, and he said, 'I wish you would, as the 'Consuelo' has a very valuable cargo and we hate to lose it.' "

There does not seem to the Court to have been but one object in getting the "Upolu" at Mahukona, and that was to as-

sist the "Consuelo" out to sea because of the very serious gale that was then blowing in the port of Mahukona and the threatening danger to the "Consuelo" if she remained there. At any rate the "Upolu" left Alaalae about seven o'clock A. M. and reached Mahukona about nine o'clock or a little after. When she reached there she blew her whistle two separate times, but received no response from the "Consuelo" and no one appeared upon the deck of that vessel, no one was aboard of her; and as the "Upolu" was in danger of being entangled in the hawsers that connected the "Consuelo" with the buoys, the "Upolu" was about to turn around and go back when her captain saw a boat leave the shore with some men in her. The testimony of the captain of the "Consuelo" at this point is of interest. He says: "I thought it was strange to see the 'Upolu' coming along at that time, and I asked one of the native crew where the 'Upolu' was going. He said, 'I think she is going to tow you out;' "and so," said the captain of the 'Consuelo,' "we all went ashore again so that we could pick up my crew and get them back on board, which I did. When I went ashore I asked Mr. Fraser if he had made any agreement with the 'Upolu' to tow me out. This was before the 'Upolu' got there, although in sight. He said 'no,' and I asked him if I would make any agreement. He said, 'no, leave that to us.' " The captain further testifies: "I went back, put my crew aboard of the 'Consuelo,' and I then spoke the captain of the 'Upolu,' and I asked him if he could tow us out, and he said he could if I set my fore and aft sails, my lower top-sails and stay-sails when we got started. That was all the conversation. I did not make any arrangement with him to do this because I supposed the owners, Mr. Fraser and Mr. Renton, took the matter out of my hands and ordered the boat unbeknown to me."

It seems hardly credible that the captain of tne "Consuelo" was unaware of the ordering of the "Upolu" to Mahukona in view of the fact that Captain Page was ashore when Mr. Fraser

was telephoning to Mr. Hind early in the morning, and that a storm was then prevailing.

It seems that the captain of the "Consuelo" and his crew assisted in getting a line on board of the "Upolu" and she towed the "Consuelo" out to sea, the actual time consumed in this towage being some three-quarters of an hour, although some of the witness for libellee testified that it took but fifteen minutes.

There is some conflict in the testimony as to whether there was any danger to the "Consuelo" at the time the services were rendered by the "Upolu;" and whether if so, the danger was such as to entitle the "Upolu" to salvage compensation. It is clear to the Court from the testimony as a whole, that there can not be any doubt as to the dangerous position in which the "Consuelo" was lying and that her captain and the owners of the vessel thought she was in danger, and that all parties, including the sailors, were conscious of it. Else why did the captain and crew leave the ship? The sailors did not go back to the ship until after the "Upolu" was sighted as appears from the evidence of both the captain and the cook of the "Consuelo." If the "Consuelo" were not in danger, why did Mr. Fraser, the owner or co-owner of the vessel, early on the morning of the 15th of November, telephone to the owner of the "Upolu" to have her sent around to the port of Mahukona, and why were Mr. Frazer and his men up at two o'clock in the morning, the latter going out to the "Consuelo," "to see if she wanted anything," and then returning to the shore with all her officers and men aboard, leaving the ship entirely alone?

If it had been possible for the captain of the "Consuelo" to have set sail and gone out of port safely, without the assistance of the "Upolu" as he now testifies, why did he not do this and not abandon his ship in the first place, and then returning ask the captain of the "Upolu" "can you tow us out?" And why after being towed out, did he remain away from the port of Mahukona until the weather moderated and was again fair? If

the place was safe and the weather such as to permit him to remain there, why did he not do so?

The real facts are there was a severe south wind blowing and the "Consuelo" was in danger of slipping her moorings, going upon the shore or being swamped in the sea. This must have been the fear that took possession of the captain and the crew when they deserted the ship. It is the common instinct of the captain of a ship to remain on her deck, and no rational explanation has been given of this desertion of the vessel.

It is clear to the Court that the services of the "Upolu" were necessary in order to take the "Consuelo" out to sea, as appears especially from the testimony of Captain Campbell, a witness for the libellee, and a man of large experience in these waters, who when asked whether a vessel could sail out from this particular spot moored as was the "Consuelo," and the wind blowing as it was blowing on that morning, testified: "She might possibly if there was not a very heavy sea on; she would have what they call a 'nip and tuck' to get out."

It is clear to the Court that the case is one where salvage compensation should be awarded. This seems to be admitted by libellee, who tendered to libellant one hundred and ten dollars when the regular towage rate as testified to is forty dollars. In this case the services of the "Upolu" were not only requested by the owner, but were of value in saving the "Consuelo," which vessel was valued at about six thousand dollars and her cargo at about the same amount.

The fact that the "Consuelo" suffered no damage is not material. If she were in danger of loss or deterioration or damage at the time the services were rendered, then it is a case for salvage. Yet the services of the "Upolu" were not of such a character as to entitle her to large compensation, although her position among the lines of the "Consuelo" placed her in danger of having her propeller caught and being cast ashore. In a sea of the character described and a storm of the nature testified to, this danger was enhanced. The Court in view of all these circumstances, is of the opinion that the "Upolu" is

entitled to salvage and fixes the amount at the sum of seven hundred and fifty dollars, to be distributed as follows:

To Frank Dalton, Captain of the "Upolu," fifty dollars; to A. Gomes, Chief Engineer thereof, and to James Davis, Assistant Engineer, twenty-five dollars each; to the five sailors constituting the crew and cook, fifty dollars, being ten dollars each; and the balance of six hundred dollars to the libellant, Robert R. Hind, with costs.

Let judgment be entered accordingly.